**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**TRUCK COUNTRY OF IOWA, INC.,**
**an Iowa Corporation,**

  **Plaintiff,**

**vs**          **Case No: 05-71848**
            **HONORABLE VICTORIA A. ROBERTS**

**R&J TRUCK SALES, LLC.,**
**a Michigan Corporation,**

  **Defendant.**
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO ITS SECOND AMENDED COMPLAINT AND MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT'S/COUNTER-PLAINTIFF'S FIRST AMENDED COUNTERCLAIM

## I.  INTRODUCTION

  Plaintiff/Counter-Defendant Truck Country of Iowa, Inc. ("Truck Country")

filed a summary judgment motion regarding Defendant/Counter-Plaintiff R&J Truck

Sales, LLC.'s ("R&J") First Amended Counterclaim.  Truck Country also seeks summary

judgment on its own Second Amended Complaint.  The Court **DENIES** the motion on

the Second Amended Complaint and **DENIES in part and GRANTS in part** the motion

on the First Amended Counterclaim.

## II.  BACKGROUND

  Truck Country is a family owned truck dealer serving several locations

throughout the mid-west.  R&J also buys and sells trucks.

1

In March 2003 Truck Country hired Matt Reeder as a sales person. Reeder was "Salesman in Charge of Wholesale Sales" for Truck Country's Memphis and Atlanta locations. Prior to his employment with Truck Country, Reeder was employed by Fleet Equipment, which was engaged in business similar to Truck Country. At Fleet, Reeder developed a business relationship with Ron Thomas, the owner of R&J.

At Truck Country, Reeder continued to engage with Thomas in the sale and purchase of trucks. Truck Country gave Reeder authority to buy and sell trucks without pre-approval from a supervisor.

Generally, a transaction between Reeder and Thomas consisted of the following:

(1) Thomas identified a particular truck on the wholesale website;

(2) Thomas placed an order for the truck with Reeder;

(3) Reeder purchased the truck from a wholesaler;

(4) After payment in full from Reeder the wholesaler would provide a release;

(5) Reeder sent the release to Thomas by fax;

(6) Thomas' agent retrieved the truck from one of several storage lots; and

(7) Thomas remitted payment to Reeder, usually via business check.

In February 2005, Truck Country discovered Reeder misrepresented truck sales and defrauded it. It terminated Reeder. He pled guilty to wire fraud on August 3, 2006. He was sentenced to 27 months in federal prison and ordered to make restitution of 5 million dollars. Reeder blamed a bi-polar disorder for his fraudulent activities.

Truck Country's internal audit says that from October 2004 to January 2005, R&J Truck purchased 41 trucks through Reeder that it did not pay for. Truck Country alleges

these transactions followed the normal course of business between Reeder and Thomas except R&J did not pay for the trucks.

R&J admits that it received but did not pay for 31 trucks, but contests its receipt of the remaining trucks. Pl.'s Mot. Sec. Am. Compl., Ex. 18; Def.'s Resp. Mot. Sec. Am. Compl. at 14. R&J says it withheld payment for these 31 trucks because of its setoff against Truck Country arising from Truck Country's alleged failure to pay for trucks, trailers, and truck transportation/freight services it purchased from R&J. At some point after Truck Country hired Reeder, Thomas asked him to arrange financing for R&J's high risk customers who were unable to get financing elsewhere. While Reeder agreed to do this for the applications Thomas forwarded to him, he never did so. Relying only on Reeder's statements that the financing was approved, Thomas transferred title to the customers.

## III.   STANDARD

This Court grants summary judgment to the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995); FED. R. CIV. P. 56(C). The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when there is sufficient "evidence on which the jury could

3

reasonably find for the [non-moving party]." *Id.* at 252.

## IV. ANALYSIS

## A. PLAINTIFF'S SECOND AMENDED COMPLAINT

## 1. Generally

Although Truck Country's motion is "Motion for Summary Judgment on its Second Amended Complaint," it only argues Count II; it is properly characterized as a *partial* motion for summary judgment. Count II is a claim for "sale on account," and alleges that Truck Country furnished property to R&J valued at $1,034,845.23 for which R&J has not paid.

The Court notes that limited documentary evidence results in the parties arguing the same documentary evidence is sufficient to prove their own claims, but insufficient to prove the other party's similar causes of action. As a result, many of each party's arguments against it adversary, undercuts its own. These awkward arguments are further complicated by R&J's failure to plead a statute of frauds defense.

## 2. Statute of Frauds

Because the value of the goods exceeds $1,000, Truck Country's claim would normally fail because of its failure to satisfy the statute of frauds with a written document signed by R&J evidencing the sale of the trucks:

> Except as otherwise provided in this section, a contract for the sale of goods for the price of $1,000.00 or more is not enforceable by way of action or defense unless there is a writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker.

M.C.L. § 440.2201(1). The statute defines goods as "all things . . . which are movable

at the time of identification to contract for sale," and also covers "transactions in goods," which brings the sale of trucks firmly within the purview of § 440.2201(1).  M.C.L. §§ 440.2105, 440.2102.

However, the statute of frauds is an affirmative defense that R&J failed to plead, and therefore waived as a defense to Count II.  *See Tcp Indus. v. Uniroyal, Inc.*, 661 F.2d 542, 547 (6th Cir. 1981) (citing FED. R. CIV. P. 8(c)); *see also R. G. Moeller Co. v. Van Kampen Constr. Co.*, 57 Mich. App. 308, 311 (Mich. Ct. App. 1975).

## 3.    Open Account (Count II)

### A.    Proof of Open Account

*A. Krolik & Co. v. Ossowski* defines an "open account" under Michigan law:

> An open account is one which consists of a series of transactions and is continuous or current, and not closed or stated.  However, all accounts which are not stated or reduced to writing are not necessarily open accounts. Thus, cases of bailment, or express contract defining the liabilities of the parties, whether evidenced by writings or not, are not as a general rule open accounts; nor is an admission of indebtedness in a precise ascertained sum, or a claim for money paid on the request of another.

*A. Krolik & Co. v. Ossowski*, 213 Mich. 1, 7 (Mich. 1920).

R&J says Truck Country cannot prove the existence of an "open account."  Truck Country responds that R&J admitted the existence of an open account in its Response to Plaintiff/Counter-Defendant's Requests for Admissions and Interrogatories.  Truck Country asked R&J to "admit that [it] purchased the truck[s] on open account."  However, in its answer, R&J "admitted only that [it] received and/or sold [29 of] the truck[s]," and conceded receipt and non-payment for two additional trucks in its

response brief.  Response to Request for Admissions; Def.'s Resp. at 14.

Truck Country also argues that R&J's original counterclaim states "at times funds were due by R&J to Truck Country, on R&J's open account with Truck Country, and at other times funds were due by Truck to R&J, on Truck's open account with R&J."  Pl.'s Reply Sec. Am. Compl. at 2.  This argument is off the mark; R&J amended its counterclaim and removed this language.  Truck Country's "admission argument" is without merit.

Truck Country also argues that even without admissions, other evidence supports the existence of an open account.  Truck Country offers its May 25, 2007 internal audit.  In response to R&J's argument that the audit is insufficient proof, Truck Country does not concede the point, but offers Thomas' informal worksheet listing received trucks along with prices for each listed truck.  R&J relies on this same document to support its counterclaim.

R&J responds that Truck Country's evidence is insufficient because it fails to meet the "requirements" of M.C.L. § 600.2145:

> In all actions brought in any of the courts of this state, to recover the amount due on an open account or upon an account stated, if the plaintiff or someone in his behalf makes an affidavit of the amount due, as near as he can estimate the same, over and above all legal counterclaims and annexes thereto a copy of said account, and cause a copy of said affidavit and account to be served upon the defendant, with a copy of the complaint filed in the cause or with the process by which such action is commenced, such affidavit shall be deemed *prima facie evidence* of such indebtedness, unless the defendant with his answer, by himself or agent, makes an affidavit and serves a copy thereof on the plaintiff or his attorney, denying the same.

M.C.L. § 600.2145 (emphasis added).

However, § 600.2145 only describes the proofs *available* to establish a

rebuttable prima facie claim for an open account; it does not describe the only means by which Truck Country may establish an open account. *See Imaging Fin. Servs. v. Lettergraphics/Detroit, Inc.*, No. 97-1930, 1999 U.S. App. LEXIS 2405, at *18-19 (6th Cir. Feb. 9, 1999) (unpublished) ("[T]he Michigan statute does not prohibit other means of making an accounting, but only establishes that an affidavit is per se prima facie evidence if not denied by the defendant."). Absent reliance on the statute, Truck Country must establish a "continued course of dealing or other circumstances . . . ." *Moeller*, 57 Mich. App. at 311-312.

To admit books of account as evidence, "it must appear that the party keeping and producing them is usually precise and punctilious respecting the entries therein, and that they are designed at least to embrace all the items of the account which are proper subjects of entry." *Countryman v. Bunker*, 101 Mich. 218, 220-221 (Mich. 1894); *Mally v. Excelsior Wrapper Co.*, 181 Mich. 568, 573 (Mich. 1914). Thomas testified that he is generally "loose" in running his business. Thus, his records arguably do not meet these requirements. While the FEDERAL RULES OF EVIDENCE determine admissibility of evidence in federal courts, it is unclear whether *Countryman's* holding also expresses a substantive burden of proof for open accounts.

Supporting the view that *Countryman* does not state a substantive component of proof of an open account is the absence of citation to *Countryman* since 1920, which predates the promulgation of the MICHIGAN RULES OF EVIDENCE and FEDERAL RULES OF EVIDENCE. Thus, it appears the holding relates only to evidentiary requirements. The MICHIGAN RULES OF EVIDENCE, and in this case the FEDERAL RULES OF EVIDENCE, usurp *Countryman's* holding and standard; *Countryman* is, therefore, inapposite on the

admissibility or evidentiary weight of Thomas' informal records.

Earlier Michigan cases also hold that "[w]here account-books are received in evidence, as they may be in some cases, it is only [admissible] where the entries are apparently made of items as they arise . . . and [are] contemporaneous . . . ." *McClintock's Appeal*, 58 Mich. 152, 155 (Mich. 1885). Truck Country's submission of an audit completed after Reeder's termination does not meet this "contemporaneous" requirement. In contrast, Thomas' ongoing informal log of the transactions between the parties clearly meets this standard. However, these cases appear to address an evidentiary standard usurped by the FEDERAL RULES OF EVIDENCE.

Neither party addresses the potential exclusion of Thomas' notes under the FEDERAL RULES OF EVIDENCE. Notwithstanding this omission, the Court notes that because Thomas "once had knowledge" of the truck sales he conducted with Reeder, his informal notes may be used by him as a recorded recollection to assist his direct testimony under FED. R. EVID. 803(5). The document may otherwise qualify as direct evidence under FED. R. EVID. 803(6) as a business record.

**B.     Sale Price**

Assuming that Truck Country provides sufficient evidence to support the existence of an "open account," its motion must still be denied. Even if evidence supports an open account, questions of fact persist on the sale price of the trucks allegedly sold to R&J, and the freight services allegedly provided. *See Grand Dress, Inc. v. Detroit Dress Co.*, 248 Mich. 447, 449 (Mich. 1929).

Truck Country points to a December 30, 2004 purchase order for ten trucks purportedly signed by Thomas. Pl.'s Reply Am. Compl., Ex. 2. The order lists prices for

each truck, and a total sale value of $227,625.  This document was discredited during oral argument by R&J's statement that Thomas contested his signature on the document.

Truck Country also points to Thomas' deposition.  Truck Country says Thomas testified he always paid the wholesale price for the trucks.

Truck Country's argument is internally inconsistent.  While maintaining that there is no contested issue of material fact because Thomas states that he bought the trucks at wholesale value, Truck Country later argues R&J purchased several trucks from Truck Country at a price above the wholesale value.  Pl.'s Reply Sec. Am. Compl. at 4-5.  In any event, Truck Country's interpretation of Thomas' testimony is not strongly supported by his deposition transcript.  Further, Truck Country appeared at one point during oral argument (and to a degree in its reply) to accept R&J's accepted value for the sale price.

Reading the facts in the light most favorable to R&J, Truck Country's construction of events cannot be sustained such that it is entitled to summary judgment.  It is not clear what R&J maintains the sales price was for any of the trucks at issue.  At first blush, it appears R&J simply contests the accuracy of Truck Country's numbers without offering a different value.  However, because R&J relies on Thomas' informal notes for the value of the trucks in its counterclaim, the Court assumes it relies on the values in this document for the alleged sales prices.

The only other evidence of the purchase price of the remaining trucks is provided by R&J's informal notes.  While some of the remaining purchase values match those on Truck Country's audit, the values listed in R&J's notes do not have specific identifying

markers, and the assumption that they are for certain trucks listed in Truck Country's audit requires speculation.  Truck Country does not argue Thomas' notes reflect sales price for the wholesale value of the trucks.  Indeed, both sides concede that because Thomas' notes lack specific identifying numbers for the trucks, it is difficult to match his notations to the sale or purchase of specific trucks listed in Truck Country's internal audit.  The sales prices for all the trucks remain contested material facts.

## C.    Formation

There is substantial disagreement about the nature of an account open/sale on account, and the proof necessary to establish the claim.  Indeed, Michigan cases defining "open account" do not make clear whether an open account can be created by an express agreement, implied in fact contract, or both.

The Court need not decide the issue.  A jury could reasonably find that either an express or implied in fact contract was entered into to create the open account.  Indeed, at oral argument R&J did not deny that it owes Truck Country for 31 trucks.  R&J only disputes the price for the 31 and its liability for the ten additional trucks it maintains it did not receive.

More importantly, *Detroit Dress* requires denial of Truck Country's motion.  In *Detroit Dress*, the Michigan Supreme Court denied a motion for summary judgment on a claim for open account where the items on the account were not disputed, but where a contested material fact remained regarding the sale price of some of the items on the account.  *Detroit Dress*, 248 Mich. at 448-449.  If the parties formed an open account only through an implied in fact contract without an agreed upon price, a question of fact remains as to the reasonable value of the trucks and/or services.

10

As explained in *Rockwell & Bond, Inc. v. Flying Dutchman, Inc.*, an implied in fact

contract:

> [A]rises under circumstances which, according to the ordinary course of dealing and common understanding, of men, show a mutual intention to contract. A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction. *The existence of an implied contract, of necessity turning on inferences drawn from given circumstances, usually involves a question of fact, unless no essential facts are in dispute.*

*Rockwell & Bond, Inc. v. Flying Dutchman, Inc.*, 74 Mich. App. 1, 7 (Mich. Ct. App.

1977) (internal citations omitted) (emphasis added). *Moeller* further explains:

> Where there is no express contract a contract may be implied in fact, where one engages or accepts beneficial services of another *for which compensation is customarily made and naturally anticipated*, and although there be no express stipulation between the parties for wages or price *the law implies an understanding or intent to pay the value of the services rendered*.

*Moeller*, 57 Mich. App. at 312 (emphasis added).

The essential elements of a contract are: (1) parties competent to contract; (2) a

proper subject matter; (3) legal consideration; (4) mutuality of agreement; (5) and

mutuality of obligation. The elements requisite for the establishment of an implied

contract are identical. The only difference is the character of the evidence necessary to

establish the contract." *Borg-Warner Acceptance Corp. v. Dep't of State*, 169 Mich.

App. 587, 590 (Mich. Ct. App. 1988) *rev'd on other grounds*, 433 Mich. 16 (1989)

(internal citations omitted). Thus, "[a]n implied contract must also satisfy the elements

of mutual assent and consideration." *Mallory v. Detroit*, 181 Mich. App. 121, 127 (Mich.

Ct. App. 1989). If Truck Country establishes an implied in fact contract existed, and the

sales price is not evident, the trier of fact may determine a reasonable value for the goods or services absent an agreement on this contract term. *See Rockwell & Bond, Inc. v. Flying Dutchman, Inc.*, 74 Mich. App. 1, 9 (Mich. Ct. App. 1977); *Miller v. Stevens*, 224 Mich. 626, 632 (Mich. 1923). This question of fact is often determined based on the custom of the industry and market value. *See Flying Dutchman*, 74 Mich. App. 1, 9 (Mich. Ct. App. 1977) (citing *H. O. Brackney & Son v. Ryniewicz*, 346 Mich. 404, 410 (Mich. 1956)). Thus, where there is no express agreement as to the price of the equipment, the law "implies an understanding or intent to pay the value of the services rendered," which must be determined by the finder of fact. *Miller*, 224 Mich. at 632.

Based on their previous business relationship, the similarity between fraudulent and legitimate transactions, coupled with R&J's acceptance of goods for which compensation is customarily made and naturally anticipated, a reasonable jury could find the parties entered into an implied in fact contract for the sale of the thirty-one trucks R&J admits it received but did not pay for. A reasonable jury could also find express contracts for the trucks, as chronicled in Thomas' informal log of transactions, in which case a contested material fact still remains between the parties as to the sales prices.

Contested material facts also remain regarding an express or implied in fact contract for the purchase of the trucks R&J does not admit it received. The bills of lading provided by Truck Country cannot show whether a pickup by R&J's agents was a pickup by R&J on its own behalf, or a pickup to perform transportation services on behalf of Truck Country. A reasonable jury could find that R&J's agents merely picked

them up for transport on behalf of Truck Country as Thomas testified they had done in the past.

## B.     R&J's First Amended Counterclaim

### 1.     Statute of Frauds (Sale of Trucks and Trailers)

R&J claims it sold trucks to Truck Country on contract, which Truck Country refused to pay for (Count I).  Because R&J cannot supply a signed written document and the value is over $1,000, this alleged contract is unenforceable under M.C.L. § 440.2201(1).

In addition, R&J does not establish an exception to the application of the statute of frauds.  Pointedly, R&J does not offer evidence showing Truck Country received and failed to reject the trucks it says it sold them, or that Truck Country "had a reasonable opportunity to inspect [them]."  M.C.L. §§ 440.2201(3)(c), 2606(1)(b).  Nor did Truck Country admit in its pleading or testimony that it received any trucks from R&J.  M.C.L. §§ 440.2201(3)(b).  This claim is barred by M.C.L. § 440.2201(1) and is dismissed.

### 2.     Count II: Breach of Contract (Truck Transportation Services)

R&J alleges that Truck Country asked R&J to transport trucks and trailers, that R&J did provide the transportation, but that Truck Country never paid for the services.

R&J relies on Thomas' running informal log of sales, receipts, and services, which list charges for freight services of $3,720 and $5,720.  Thomas testified that these notations represent the "specifically agreed upon price for [the freight services]" that

R&J performed for Truck Country. Thomas Dep. at 194. Viewing the facts and drawing inferences in the light most favorable to R&J, this evidence supports the inference of an express or implied in fact contract for freight/transportation services. This claim continues to trial.

## 3. Count III: Breach of Finance Contract

R&J claims Truck Country reneged on an agreement to obtain financing for high risk customers, and that R&J did obtain customers who needed such financing by getting the customers to sign purchase agreements and credit applications.

This claim fails for lack of consideration. The Michigan Supreme Court explained:

> Valid consideration for a contract cannot be presumed merely because two parties receive [a] benefit from each other. Rather, a bargained-for exchange is required. The essence of consideration, therefore, is legal detriment that has been bargained for and exchanged for the promise. The two parties must have agreed and intended that the benefits each derived be the consideration for a contract.

*Higgins v. Monroe Evening News*, 404 Mich. 1, 20-21 (Mich. 1978) (internal citation omitted).

R&J describes the alleged contract as: "Reeder told Thomas that Truck Country could help Thomas place financing for [R&J's customers], with Truck Country receiving a commission . . . from the lenders. Reeder proposed a win-win situation for Truck Country and R&J." Pursuant to their discussion, Thomas began to send credit applications to Reeder . . . ." Def.'s Resp. Countercl. at 6.

A "win-win situation" does not form a contract. "Valid consideration for a contract

cannot be presumed merely because two parties receive benefit from each other.*"

*Monroe Evening News*, 404 Mich. at 20-21.  Instead, there must be a "*legal detriment that has been bargained for and exchanged for the promise*," such that "the two parties must have agreed and intended that the benefits each derived be the consideration for a contract."  *Id.* (emphasis added).

R&J does not identify a legal detriment here.  Moreover, the alleged contract does not support a finding that there was mutuality of obligation:

> Mutuality of obligation is an essential element of every contract.  A contract lacks mutuality when one party is obligated to perform, but not the other.  Where a contract obligates only one party to perform, while exempting the other party from any obligation to do so, it lacks mutuality and is void for want of consideration.

*Commercial Movie Rental, Inc. v. Larry Eagle, Inc.*, 738 F. Supp. 227, 230 (W.D. Mich. 1989); *Reed v. Citizens Ins. Co.*, 198 Mich. App. 443, 449 (Mich. Ct. App. 1993) *overruled on other grounds by* 472 Mich. 521 (2005).   R&J does not identify an obligation to do anything pursuant to the alleged contract.  This claim is without merit.

## 4.     Count IV: Unjust Enrichment (Trucks and Transportation Services)

R&J argues Truck Country was unjustly enriched by R&J's provision of trucks, trailers, and freight services without payment to R&J.

A claim for unjust enrichment requires:

(1) the receipt of a benefit by the defendant from the plaintiff; and

(2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant.

*Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195 (Mich. Ct. App. 2006) *appeal denied*, 480 Mich. 928 (2007) (citing *Barber v SMH (US), Inc.*, 509 N.W.2d 791

(1993)).  Further, the existence of an express contract bars a quantum meruit claim.

*Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 199 (Mich. Ct. App. 2006).

*Belle Isle Grill Corp. v City of Detroit*, 256 Mich. App. 463, 478 (Mich. Ct. App. 2003).

Since the Court holds as a matter of law that there is no enforceable contract for sale of

trucks, and declines to rule on the existence of an express or implied contract for freight

services, Plaintiff may make a claim for unjust enrichment.

  As to R&J's claim for unjust enrichment for freight services (which is not

dismissed), Truck Country argues that under Michigan law R&J cannot simultaneously

plead and maintain alternative claims for breach of contract and unjust enrichment for

the same subject matter.  However, under FED. R. CIV. P. 8(e)(2) a party may plead a

contract claim and an alternative claim for unjust enrichment.  *See Siegel-Robert, Inc. v.*

*Mayco Int'l, LLC*, 07-13191, 2007 U.S. Dist. LEXIS 79750, at *5 (E.D. Mich. Oct. 29,

2007).  R&J may alternatively allege claims for breach of contract and unjust enrichment

in relation to freight services.

  R&J fails to show a contested material fact on the majority of this claim.  R&J

provides virtually no evidence of Truck Country's "receipt of a benefit" of any kind from

R&J.  R&J offers no proof of delivery of trucks or trailers to Truck Country, nor proof that

Truck Country actually received freight services.

  However, R&J does establish contested material facts on four trucks Thomas

testified he had personal knowledge Truck Country received payment for, from a third

party dealer.  Thomas Deposition at 189.  Payment for trucks is "receipt of a benefit,"

and R&J raises a contested material fact on this claim for four trucks.

**5.      Count V: Promissory Estoppel (Promise to Finance)**

Absent proof of a contract for financing, R&J alternatively argues it is entitled to a claim of promissory estoppel for Reeder's failure to honor his promise to find financing for the applications Thomas forwarded to him.

The elements of a promissory estoppel claim are:

(1) a promise;

(2) that [Reeder] should reasonably have expected to induce action of a definite and substantial character on the part of [Thomas]; and

(3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided.

*Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 686-687 (Mich. Ct. App. 1999) (citing *Marrero v McDonnell Douglas Capital Corp.* 200 Mich. App. 438, 442 (1993)). R&J's claim for promissory estoppel is not barred by the existence of a financing contract because there was no consideration for that alleged agreement.  *General Aviation v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir. Mich. 1990).

The Court cannot hold as a matter of law that Thomas' reliance on Reeder's representations was at all times unreasonable.  Thomas had an ongoing, close, and loose business relationship with Reeder.  As an example, during their previous dealings while Reeder was at Truck Country, he released trucks to Thomas' agents before receiving payment for them.

In contrast, it was unreasonable for Thomas to rely on a promise to finance after Reeder admitted he had not obtained, or even attempted to obtain, financing for the applications.  R&J's claim for promissory estoppel for the transfer of titles to customers

17

occurring after Reeder revealed (in late November or December 2004) he had not obtained financing for the previous applicants, would be unreasonable, and are dismissed. These include at least the four transfers of title that occurred on or after January, 27, 2005. Pl.'s Mot. Sum. Sec. Am. Counter., Ex. 8. The remainder of this claim continues to trial.

**6.      Count VI: Conversion (Trucks and Trailers)**

R&J alleges Truck Country converted trucks and trailers.

**A.      Statutory Conversion**

The Michigan conversion statute states:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

(a) Another person's stealing or embezzling property or converting property to the other person's own use.

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

M.C.L. § 600.2919a.

A question of fact exists on this claim.

**B.      Common Law Conversion**

Common law conversion consists of the wrongful assertion of dominion over another's personal property in denial of or inconsistent with the owner's rights.

*Foremost Ins., Co., v Allstate Ins., Co.,* 439 Mich. 378, 391(1992) *aff'd*, 439 Mich. 378

(1992). This includes the "willful disregard of [another's] title.*"* *Nelson & Witt v. Texas*

*Co.*, 256 Mich. 65, 70 (Mich. 1931). However, a person cannot convert his or her own

property. *Foremost,* 439 Mich. at 391. If the parties entered into a contract, Truck

Country had title to the trucks and trailers, and had a right to dispose of them as it saw

fit.

However, since R&J's alleged contract for trucks is unenforceable under the

statute of frauds, Truck Country could be liable if it willfully disregarded R&J's ownership

of the trucks and trailers.

With the exception of the four trucks R&J alleges Truck Country received

payment for from a third party, R&J provides no evidence supporting a finding or a

reasonable inference that Truck Country wrongfully asserted dominion over its trucks or

willfully disregarded its titles. This claim continues to trial only with respect to the four

trucks.

7.      **Count VII: Fraudulent Misrepresentation (Statements About Financing)**

R&J alleges Reeder made fraudulent misrepresentations when he stated he had

secured financing for the applications Thomas forwarded to him.

The elements of fraudulent misrepresentation include:

(1) [Reeder] made a material representation;

(2) The representation was false;

(3) When [Reeder] made the representation, [he] knew that it was false, or [he]
made the representation recklessly, without any knowledge of its truth, and as a
positive assertion;

(4) [Reeder] made the representation with the intention that it should be acted on by the [Thomas];

(5) [Thomas] acted in reliance on the representation; and

(6) [Thomas] suffered injury due to his reliance on the representation.

*Hord v. Envtl. Research Inst.*, 463 Mich. 399, 404 (Mich. 2000). The fourth element requires reasonable reliance. *See Novak*, 235 Mich. App. at 690-691.

For the reasons discussed above regarding R&J's promissory estoppel claim, a jury could find Thomas' reliance was reasonable before Reeder confessed he was not getting approval for the applications. This claim continues in part to trial.


**8.      Count VIII: Innocent Misrepresentation (Statements About Financing)**

R&J alleges Reeder made innocent misrepresentations when he stated he would secure financing for the applications Thomas forwarded to him.

R&J's claim for innocent misrepresentation fails because "the misrepresentation [must] be made in connection with making a contract and the injury suffered by the victim *must inure to the benefit of the misrepresenter.*" *United States Fidelity & Guar. Co. v. Black*, 412 Mich. 99, 118 (Mich. 1981) (emphasis added). Even assuming that the parties' discussions related to the making of a contract, any injury to R&J by Truck Country did not inure to Truck Country. This claim is without merit.

**9.      Count IX: Negligent Misrepresentation**

R&J alleges Reeder made negligent misrepresentations when he stated he had secured financing for the applications Thomas forwarded to him.

A claim for negligent misrepresentation "requires plaintiff to prove 'that a party

justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care.'" *Fejedelem v. Kasco*, 269 Mich. App. 499, 502 (Mich. Ct. App. 2006) *appeal denied*, 475 Mic. 872 (2006) (quoting *The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust*, 262 Mich. App. 485, 502 (2004) *appeal denied*, 472 Mich. 866 (2005).  Truck Country argues only that Thomas' reliance on Reeder's representations was unreasonable.

For the reasons discussed above, the Court cannot hold as a matter of law that such reliance was unreasonable.  This claim continues in part to trial.

## V.    CONCLUSION

The Court **DENIES** Truck Country's Motion for Partial Summary Judgment on its Second Amended Complaint.  Both claims continue to trial.

The Court **GRANTS in part and DENIES in part** Truck Country's Motion for Summary Judgment on R&J's Amended Counterclaim.  The Court grants Truck Country's motion on the Counterclaim with respect to Counts I, III, and VIII.   The Court also grants Truck Country's motion on Counts V, VII, and IX for claims relating to the transfer of title after Reeder informed Thomas he had failed to secure financing, as well as Counts IV and VI (as to the four trucks for which Truck Country received payment).  The motion is denied on these counts in other respects.  Counts II, IV, V, VI, VII, and IX will continue to trial.

**IT IS ORDERED**.

    ___/s/ Victoria A. Roberts_____
    Victoria A. Roberts
    United States District Judge

Dated:  May 9, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 9, 2008.

s/Carol A. Pinegar
Deputy Clerk